



FILED

SEP 1 6 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

|  |  |
|---|---|
| In re | Case No. 10-42260-E-13 |
| CHAND K. SINGH, | |
| Debtor(s). | |
| _____ | |
| CHAND K. SINGH, | Adv. Pro. No. 11-2049 |
| Plaintiff(s), | Docket Control No. CJO-1 |
| v. | |
| U.S. BANK; MORTGAGE ELECTRONIC INFORMATION SYSTEMS, INC.; CENTRAL MORTGAGE COMPANY; and WILLIAM G. MALCOLM, | |
| Defendant(s). | |
| _____ | |

### MEMORANDUM OPINION AND DECISION

Defendants Central Mortgage Company, Mortgage Electronic Registration Systems, Inc., and William G. Malcolm (hereinafter, "Defendants") seek to dismiss this adversary proceeding pursuant to Federal Rule of Civil Procedure 12(b)(6) as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012. In relevant part, Defendants argue that:

> (1)  The complaint fails to specify which defendant committed the allegedly wrongful acts;



    (2)    The first cause of action, for declaratory relief, fails because there was no violation of the automatic stay;

    (3)    The second cause of action, for violation of the automatic stay pursuant to 11 U.S.C. § 362(a), fails because there was no violation of the automatic stay;

    (4)    The third cause of action, for violation of the automatic stay pursuant to 11 U.S.C. § 362(k)(1), fails because there was no violation of the automatic stay;

    (5)    The fourth cause of action, for violation of the Real Estate Settlement Procedures Act ("RESPA"), fails because there is no private cause of action under 12 U.S.C. § 2604; and,

    (6)    The fifth cause of action, for civil conspiracy, fails because Plaintiff-Debtor has not alleged an underlying tort or actual conspiracy.

The court's decision is to grant the Motion as to Mortgage Electronic Systems, Inc., and William G. Malcolm as to all causes of actions and claims.  The court grants the Motion as to the Second and Third Causes of Action (Violation of Automatic Stay and Damages), the Fourth Cause of Action (RESPA Claims), and the Fifth Cause of Action (Civil Conspiracy), and denies the Motion as to the First Cause of Action (Declaratory Relief) for Central Mortgage Company.

## FACTS AS ALLEGED

Downey Savings and Loan Association, FA ("Downey") entered into a loan with Plaintiff-Debtor on February 25, 2005.[1] Plaintiff-Debtor asserts that Downey "did specify service of the loan to Mortgage Electronic Information Systems, Inc. ("MERS"), as

---

[1]/    Dckt. 1 at 4.

    The facts "stated" in this decision are as alleged in the pleadings.  The court does not make any factual findings as to the facts underlying the claims in this adversary proceeding.

recorded on January 3, 2006."[2]  The note was allegedly assigned to Central Mortgage Company on an unspecified date.  Defendant Central Mortgage Company filed a proof of claim on September 1, 2010, in the secured amount of $469,000.26.[3] The proof of claim stated that fourteen (14) pre-petition mortgage payments were listed as past due, from July 2009 to August 2010, totaling $24,635.90.  The Plaintiff-Debtor filed her Chapter 13 bankruptcy case on August 20, 2010.[4]  The Plaintiff-Debtor filed her initial Chapter 13 plan on the same date.[5]  The initial Plan proposed to pay Central Mortgage Company's secured claim as a Class 1 with a monthly contract installment of $1,621.00, identified a monthly late charge of $100.00, listed a pre-petition arrearage of $24,000.00, provided an interest rate of 0.00% for the arrearage, and set a monthly dividend of $450.00 beginning in the fourth month to repay the arrearage.[6]  On September 3, 2010, Central Mortgage Company filed a Notice of Change of Mortgage Payment, which increased the mortgage payment to $2,566.11, effective October 1, 2010.[7]  In relevant part, the Notice provided:

> [P]lease be advised that the customer's first lien mortgage payment will change from $1,621.25 to $2,566.11 effective October 1, 2010 because of recent escrow analysis.  The payment is broken down as $1,102.22 Principal/Interest and $1,463.89 escrow.  Please advise

---

[2]  *Id.*

[3]  Proof of Claim  No. 2, Bankr. E.D. Cal. No. 10-42260-E-13L.

[4]  Bankr. E.D. Cal No. 10-42260-E-13L, Dckt. 1

[5]  Bankr. E.D. Cal No. 10-42260-E-13L, Dckt. 5.

[6]  Bankr. E.D. Cal. No. 10-42260-E-13L, Dckt. 5 at 2, 5.

[7]  Bankr. E.D. Cal No. 10-42260-E-13L,  Dckt. 14.

your client of the change.  We will notify the Trustee's office as well.[8]

No objections to the plan were filed within the period specified in the Notice of the Commencement of Case.[9]  Subsequently, the court confirmed the plan on October 20, 2010.[10]  The Plaintiff-Debtor filed a first modified plan on March 18, 2011,[11] and a motion to confirm on the same date.[12]  The first modified plan did not provide for the change in mortgage payments as requested by Central Mortgage Company.

### THE COMPLAINT

Plaintiff-Debtor filed this adversary proceeding on January 21, 2011.  Dckt. 1, "Complaint."  The Complaint seeks (1) declaratory relief and injunctive as to the rights and obligations of the respective parties to this adversary proceeding, including a statement of the amount of contractual payments due, an accounting, and a detailed analysis of pre-petition and post-petition escrow shortages, *Id.* at 9; (2) Money damages for violation of the automatic stay of 11 U.S.C. § 362(a), *Id.* at 10; (3) Money damages for violation of the automatic stay pursuant to 11 U.S.C. § 362(k)(1), *Id.* at 11-12; (4) Money damages for violation of the RESPA, *Id.* at 12-14; and (5) Money Damages for civil conspiracy, *Id.* at 14-16.  The court will consider each of the foregoing claims in turn.

---

[8] *Id.*

[9] Bankr. E.D. Cal No. 10-42260-E-13L, Dckt. 9.

[10] Dckt. 19.

[11] Bankr. E.D. Cal No. 10-42260-E-13L, Dckt. 35.

[12] Bankr. E.D. Cal No. 10-42260-E-13L, Dckt. 26.

In considering a motion to dismiss, it is necessary to identify what has actually been alleged by the Plaintiff-Debtor and against whom.   Starting with the causes of action and working outward to the general allegations is appropriate in the Adversary Proceeding.

**First Cause of Action**

The First Cause of Action is for declaratory relief against the "Defendants" collectively.   No specific person or persons are identified as having a dispute with the Plaintiff-Debtor.   It is alleged that there is a dispute concerning the amount of the post-petition monthly payments to be made by the Plaintiff-Debtor on the Downey Note.   Specifically, it is alleged that a dispute exists concerning the computation of amounts properly included for escrow advances made by the creditor pre-petition and post-petition.

There is a further allegation that a "controversy exists" and that an injunction should be issued, restitution should be ordered, and the court determine that the unnamed defendants' conduct was "willful[,] malicious[, and] purposely completed to maximize ... shareholder wealth."   *Id.* ¶ 47.

The general allegations in the Complaint assert that Central Mortgage Company filed a proof of claim in the Plaintiff-Debtor's bankruptcy case stating that it was the assignee of the Downey Note and Deed of Trust.   *Id.* ¶¶ 17, 18, 25.   The proof of claim included the arrearage for fourteen pre-petition mortgage payments, title fees, attorneys' fees, and publication fees.   *Id.* ¶¶ 29, 30.   In the bankruptcy case, Central Mortgage Company filed a notice of change in post-petition monthly payment on the Downey Note. *Id.* ¶ 32.   Plaintiff-Debtor then asserts that an unnamed Defendant

generated a post-petition escrow account disclosure statement which increased, from the $1,621.25 amount, the post-petition payments on the Downey Note to $2,566.11. *Id.* ¶¶ 25, 29. However, the Complaint does assert that it was Central Mortgage Company which communicated the increase in the post-petition monthly payments on the Downey Note. *Id.* ¶ 32.

From these allegations, the only named Defendant who appears to be the subject of these allegations to determine the correct amount of the post-petition monthly payments on the Downey Note is Central Mortgage Company. This is consistent with Central Mortgage Company having filed a proof of claim asserting the right to be paid on the Downey Note.

**Second and Third Causes of Action**

It is alleged that unnamed Defendants had knowledge of the bankruptcy and automatic stay, and the unnamed Defendants conducted a post-petition escrow analysis for the obligation owed by the Plaintiff-Debtor on the Downey Note. *Id.* ¶¶ 49, 52. The unnamed Defendants conducted the analysis so as to include the pre-petition arrearage and thereby increased the post-petition monthly payments to include repayment of the pre-petition arrearage which was otherwise provided for in the Chapter 13 Plan. *Id.* ¶¶ 52, 53. The unnamed Defendants issued a notice of a post-petition monthly payment increase to the Chapter 13 Trustee for the purpose of obtaining payment of the pre-petition arrearage through post-petition monthly mortgage payments from the Plaintiff-Debtor. *Id.* ¶¶ 54, 55, 56. It is further alleged that this conduct was done intentionally, violated the automatic stay, and that the Plaintiff-Debtor has suffered damages identified as increased post-

6

petition monthly payment on the Downey Note, attorneys' fees, and unidentified emotional distress. *Id.* ¶¶ 57, 59, 63, 64, 65, 66, 67.

Considering the allegations in the Complaint, the only person identified as having engaged in any of the alleged improper conduct is Central Mortgage Company.

**Fourth Cause of Action**

The Plaintiff-Debtor asserts that the Downey Note is part of a loan transaction subject to RESPA. It is alleged that upon the assignment, sale or transfer or change in servicer for the Downey Note, unnamed Defendants were required to notify Plaintiff-Debtor not less than 15 days before the transfer of the loan. *Id.* ¶¶ 71, 72, 73. It is alleged that this notice was not given by unnamed Defendants. *Id.* ¶¶ 74, 75, 76. Plaintiff-Debtor concludes that unnamed Defendants have violated RESPA. It appears that the identity of the unnamed Defendant for the RESPA Cause of Action is Central Mortgage Company.

**Fifth Cause of Action**

The Plaintiff-Debtor alleges that unnamed Defendants engaged in conduct to recoup pre-petition claims (the pre-petition arrearage due on the Downey Note attributable to escrow amounts) from post-petition property of the bankruptcy estate. This recoupment was obtained by improperly increasing the post-petition monthly payments on the Downey Note. *Id.* ¶ 85. It asserted that unnamed Defendants conspired to do this and gave notice of the post-petition monthly payment on the Downey Note (including payment of the pre-petition arrearage) knowing that the Chapter 13 Trustee would collect the increase monthly payment from the Plaintiff-

1  Debtor.  *Id.* ¶ 87.  It is alleged that the unnamed Defendants
2  assisted unnamed assignees or successors of unidentified
3  instruments in unstated ways of concealing the collection of
4  unidentified pre-petition arrearage through increased post-petition
5  payments.  Further, an unnamed defendant knows the source of the
6  decision making process for this conspiracy and has a duty to
7  counsel the various unnamed Defendants as to the automatic stay
8  provisions.  *Id.* ¶¶ 90, 91, 93, 94.

9                              **ANALYSIS**

10       In considering a motion to dismiss, the court starts with the
11  basic premise that the law favors disputes being decided on their
12  merits, and a complaint should not be dismissed unless it appears
13  beyond doubt that the Plaintiff-Debtor can prove no set of facts in
14  support of her claim which would entitle her to the relief.
15  *Williams v. Gorton*, 529 F.2d 668, 672 (9th Cir. 1976).  Any doubt
16  with respect to whether a motion to dismiss will be granted should
17  be resolved in favor of the plaintiff.  *Pond v. Gen. Electric Co.*,
18  256 F.2d 824, 826-27 (9th Cir. 1958).  For purposes of determining
19  the propriety of a dismissal before trial, allegations in the
20  complaint are taken as true.  *Kossick v. United Fruit Co.*, 365 U.S.
21  731, 732 (1961).

22       The complaint must provide more than labels and conclusions,
23  or a formulaic recitation of a cause of action; it must plead
24  factual allegations sufficient to raise more than a speculative
25  right to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555
26  (2007).  Federal Rule of Civil Procedure 8, made applicable to this
27  adversary proceeding by Federal Rule of Bankruptcy Procedure 7008,
28  requires that complaints contain a short, plain statement of the

claim showing entitlement to relief and a demand for the relief requested. Fed. R. Civ. P. 8(a). As the Court held in *Bell Atlantic*, the pleading standard under Rule 8 does not require "detailed factual allegations," but it does demand more than an unadorned accusation or conclusion of a cause of action. *Id.* at 555.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009) (citations and quotation marks omitted). Rule 8 also requires that allegations be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

In ruling on a 12(b)(6) motion to dismiss, the Court may consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court need not accept unreasonable inferences or conclusory deductions of fact cast in the form of factual allegations. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor is the court required to "accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

### CLAIMS ARE NOT ASSERTED AGAINST THE NON-CENTRAL MORTGAGE COMPANY DEFENDANTS

In the Complaint, the Plaintiff-Debtor makes broad sweeping

allegations of conduct against unidentified "Defendants" or "Defendant." All but Central Mortgage Company are alleged to have held an interest in the Note sometime in the past or provided loan servicing, but only Central Mortgage Company is alleged to have asserted any rights or interest in the Note in this bankruptcy case. Merely alleging that someone was involved in a conspiracy does not make them responsible for the conduct of a defendant alleged to have engaged in the improper conduct.

As to the first four causes of action, the only Defendant alleged to have engaged in the conduct at issue is Central Mortgage Company. Plaintiff-Debtor's argument that "due to the complexity of the software/computer systems employed by the Defendant(s), Plaintiff-Debtor is unable to point with specificity which Defendant engaged in what specific conduct" is not persuasive here. No plausible claims are stated against the non-Central Mortgage Company Defendants. Rather, it appears that the Plaintiff-Debtor is attempting to wrap them into this action by alleging a civil conspiracy.

The Plaintiff-Debtor fails to assert any plausible claims against Mortgage Electronic Registration System, Inc. and William G. Malcolm in the first four causes of action: Declaratory Relief, Violation of Automatic Stay, Violation of 11 U.S.C. § 362(k), and Violation of RESPA. All of the alleged misconduct is that of Central Mortgage Company in this bankruptcy case. No misconduct is identified to either of these two other Defendants, and they appear to be swept into the first four causes of action solely by the Plaintiff-Debtor making her allegations against a generic "Defendant" or "Defendants."

No plausible claims having been pled against Mortgage Electronic Registration System, Inc. or William G. Malcolm, the first four causes of action are dismissed as to each of these two Defendants, without prejudice and with leave to amend.

## DECLARATORY RELIEF

Declaratory relief is an equitable remedy distinctive in that it allows adjudication of rights and obligations on disputes regardless of whether claims for damages or injunction have arisen. "In effect, it brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981). The party seeking declaratory relief must show (1) an actual controversy and (2) a matter within federal court subject matter jurisdiction. *Calderon v. Ashmus*, 523 U.S. 740, 744 (1998). There is an implicit requirement that the actual controversy relate to a claim upon which relief can be granted. *Earnest v. Lowentritt*, 690 F.2d 1198, 1203 (5th Cir. 1982).

The court may only grant declaratory relief where there is an actual controversy within its jurisdiction. *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). The controversy must be definite and concrete. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937). Defendants argue that Plaintiff-Debtor has failed to set out any facts demonstrating that a RESPA Notice was generated to collect pre-petition claims. However, in reading the complaint in the light most favorable to the Plaintiff-Debtor, the Complaint does state that Central Mortgage Company conducted an escrow analysis, that the escrow analysis caused pre-petition escrow shortfalls to be included in post-petition payments, and

1  that Plaintiff-Debtor and Chapter 13 Trustee were notified of this
2  improper increased amount so that such amount would be paid post-
3  petition to Central Mortgage Company.

4      From a fair reading of the Complaint it is clear that
5  Plaintiff-Debtor alleges that a dispute exists between Central
6  Mortgage Company and Plaintiff-Debtor concerning the correct amount
7  of the post-petition installments which are properly due on the
8  secured claim.    The request for declaratory relief is not
9  duplicative of other causes of action.    Only after the court
10 determines the correct amount of the post-petition payments will
11 the Plaintiff-Debtor, Central Mortgage Company, and the Chapter 13
12 Trustee know the correct amount to be paid monthly.

13     To the extent that the Plaintiff-Debtor is seeking injunctive
14 relief, restitution, or other adjudication of rights in the First
15 Cause of Action, such are improper as part of this declaratory
16 relief claim.    To the extent that a "dispute" exists as to whether
17 any of the Defendants have violated rights of the Plaintiff-Debtor,
18 then the appropriate action may be commenced asserting those rights
19 and damages which may be recoverable.    Plaintiff-Debtor has not
20 pled claims for the additional relief, but has merely added those
21 words to the relief requested.    The court will not - and cannot -
22 issue a precursory or advisory opinion as to other rights or
23 interests the Plaintiff-Debtor may or may not have against any of
24 the Defendants.

25     The Motion is denied as to the claim for Declaratory Relief
26 against Central Mortgage Company with respect to the issue of the
27 correct amount of the post-petition monthly installment payments
28 and the amount of the pre-petition claim, and granted as to Central

12

1  Mortgage Company for any other relief requested in the First Cause
2  of Action and all claims in the First Cause of Action against
3  Mortgage Electronic Registration Systems, Inc. and William G.
4  Malcolm, without prejudice and with leave to amend.

5  **VIOLATION OF THE AUTOMATIC STAY**

6      The Plaintiff-Debtor maintains that the conduct of Central
7  Mortgage Company in recalculating and increasing the post-petition
8  payments violated the automatic stay. The Plaintiff-Debtor alleges
9  that Central Mortgage Company asserts the claim in this case and
10 seeks to obtain payment on the obligation evidenced by the Note.

11     Defendants argue that the second and third causes of action,
12 for violation of the automatic stay, fail because as a matter of
13 law, the Defendants have not violated the automatic stay.
14 Defendants also assert that the complaint fails to properly allege
15 facts which demonstrate a violation of the automatic stay.
16 Defendants contend that the issuance of the RESPA Notice cannot
17 violate the automatic stay and cite a number of cases in support of
18 this assertion. *See Zotow v. Johnson (In re Zotow)*, 432 B.R. 252,
19 261 (B.A.P. 9th Cir. 2010); *Colo. E. Bank & Trust v. McCarthy (In
20 re McCarthy)*, 421 B.R. 550, 565 (Bankr. D. Colo. 2009); *Cousins v.
21 CitiFinancial Mortg. Co. (In re Cousins)*, 404 B.R. 281, 287 (Bankr.
22 S.D. Ohio 2009); *Pultz v. NovaStar Mortg., Inc. (In re Pultz)*, 400
23 B.R. 185, 190-91 (Bankr. D. Ma. 2008); *Connor v. Countrywide Bank,
24 N.A. (In re Connor)*, 366 B.R. 133, 138 (Bankr. D. Haw. 2007); *Chase
25 Manhattan Mortg. Corp. v. Padgett*, 268 B.R. 309, 314 (S.D. Fla.
26 2001); *In re Draper,* 237 B.R. 502, 505 (Bankr. M.D. Fla. 1999).

27     Central Mortgage Company places great reliance on the
28 Bankruptcy Appellate Panel decision in *Zotow*, *supra*. In *Zotow*, BAC

13

Home Loan Servicing, LP ("BAC") sent one post-petition notice to the debtors showing an increase in the post-petition monthly mortgage payment. It was further alleged that BAC received several payments from the Chapter 13 trustee at the increased amount.

The *Zotow* court first considered the decision of the Fifth Circuit Court of Appeals in *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348 (5th Cir. 2008). In *Campbell*, the Fifth Circuit Court of Appeals concluded that the automatic stay precluded Countrywide Home Loans, Inc. ("Countrywide") from attempting to obtain payment on the pre-petition arrearage other than as permitted by the Bankruptcy Code. The obligation owing for a pre-petition arrearage, even if the claim is subject to the anti-modification provision of 11 U.S.C. § 1325(b)(2), is a pre-petition claim subject to the automatic stay provisions of 11 U.S.C. § 362(a). *Campbell,* 545 F.3d at 354. However, the only conduct by Countrywide in *Campbell* was filing a proof of claim stating the higher installment amount. Filing a proof of claim, even one which grossly overstates the claim, was not held to be a violation of the automatic stay. *Id.* at 356.

The Third Circuit Court of Appeals has also addressed this issue in *In re Rodriguez*, 629 F.3d. 136 (3rd Cir. 2010). In *Rodriguez,* Countrywide increased the post-petition installments to recover a pre-petition escrow arrearage. *Id.* at 143-144. After the bankruptcy case was filed, Countrywide issued a revised escrow analysis and demand for payment to the debtors. The Third Circuit Court of Appeals concluded that the pre-petition arrearage was part of the pre-petition claim which was governed by the Bankruptcy Code. *Id.* at 142. Countrywide was entitled to be paid the pre-

14

petition arrearage portion of its claim, but Countrywide could not violate the automatic stay to obtain payment of the pre-petition arrearage. *Id.* at 142-143. The Third Circuit concluded that an attempt to obtain payment of a pre-petition arrearage outside the plan payment could be a violation of the stay. *Id.* The matter was remanded to the trial court to determine if the violation was willful to support an award of damages pursuant to 11 U.S.C. § 362(k). This decision in *Rodriguez* was issued after the Bankruptcy Appellate Panel's decision in *Zotow*.

The Panel in *Zotow* considered the scope of the automatic stay with respect to communications relating to pre-petition claims. Not every communication is prohibited. Rather, prohibited communications are those which, based on direct or circumstantial evidence, are geared toward collection of pre-petition debt, and which are accompanied by coercion or harassment. *Zotow*, 432 B.R. at 259. Relying on *Morgan Guarantee Trust Company Of New York v. American Savings and Loan Association*, 804 F.2d 1487 (9th Cir. 1986), the Panel concluded that a mere request for payment and informational statement are permissible communications which do not violate the automatic stay. *Id. at 1491.* The Bankruptcy Appellate Panel also recognizes that whether a communication is a permissible or prohibited one is a fact-driven inquiry which makes any bright line test unworkable. *Zotow,* 432 B.R. at 258.

In *Morgan Guarantee Trust Company Of New York v. American Savings and Loan Association*, the Ninth Circuit addressed the issue of whether the presentment of a note issued by Johns Manville

violated the automatic stay.[13]  Because the automatic stay seeks to ensure the orderly administration of the debtor's estate, provide a breathing spell for the debtor,  maintain the status quo, and prevent harassment of a debtor by sophisticated creditors, a request for payment (as with the presentment of a negotiable instrument) does not violate the automatic stay unless it is accompanied by coercion or harassment, such as immediately or potentially threatening the debtor's possession of property. *Morgan*, 804 F.2d at 1491.  Examples of communications cited by the Ninth Circuit as violating the automatic stay included: (1) notice of intent to terminate lease, (2) notice of intent to terminate franchise, (3) notice of medical clinic refusal to provide future medical services because of refusal to pay for prior services, (4) letter informing debtor that an attorney had been hired to collect a delinquent account, (5) college refusing to release transcripts as a method to force payment, and (6) a creditor who made repeated visits and telephone calls to a debtor. *Id.*  Examples of communications not violating the automatic stay included: (1) letter sent to debtor's attorney that a credit union would not have further business dealings with the debtor unless debt was reaffirmed, and (2) communications setting out the basis of the claim (informal proof of claim).  *Id.*

The *Zotow* court concluded that the stay had not been violated on the facts of that case because Countrywide sent a single notice which did not request payment.  The one notice communicated the information obtained in the recent escrow analysis computed by

---

[13]/ This case predated the amendment to 11 U.S.C. § 362(b)(10) which exempts presentment of a negotiable instrument from the automatic stay.

Countrywide.   The record established at the evidentiary hearing
revealed no indication that Countrywide attempted to collect the
pre-petition arrearage outside the bankruptcy court.   The Panel
placed significant weight on there being only a single notice sent
to the debtor.   Given that there was one notice, no other action
taken to obtain payment, and undisputed facts which did not
constitute harassment or coercion, the Panel concluded that the
single notice did not violate the automatic stay.

Applying both the spirit and letter of *Morgan Guarantee Trust
Company Of New York v. American Savings and Loan Association*,
creditors and debtors are allowed to communicate their disparate
positions and rights they seek to assert.   It is when coercion or
harassment is coupled with the communication that they can be in
violation of the automatic stay.

In this case, the Plaintiff-Debtor argues that the calculation
itself, in addition to the filing of the notice of change in
mortgage payment, violates the automatic stay.   It is asserted that
filing the notice of change in mortgage payment will result in the
Chapter 13 Trustee forcing the Plaintiff-Debtor to pay the pre-
petition arrearage as a post-petition mortgage installment rather
than as a proper plan payment.   However, the Plaintiff-Debtor
alleges nothing more to indicate that there was any harassing or
coercive conduct by Central Mortgage Company.   Merely that it
asserted the right to a higher post-petition payment based upon its
interpretation of RESPA.

With respect to Central Mortgage Company (the court having
identified Central Mortgage Company as the only potential defendant
being referenced under the Second and Third Causes of Action), the

17

Plaintiff-Debtor makes generic broad sweeping allegations of a
pattern of conduct in which Central Mortgage Company attempted to
obtain payment on a pre-petition claim outside the strictures of
the Bankruptcy Code.  But the specific allegations in this case are
that Central Mortgage Company communicated to the Plaintiff-Debtor,
Chapter 13 Trustee, and everyone else in the case that Central
Mortgage Company computed an increase in the post-petition
payments.  At best, the Plaintiff-Debtor argues that she knew the
Chapter 13 Trustee could seek to dismiss the case if she failed to
pay an undisputed post-petition mortgage payment or assert her
contention as to the correct amount.

Glaring in its absence in the Complaint are any allegations
contending that Central Mortgage Company, either directly or
indirectly, threatened or harassed the Plaintiff-Debtor.  Commonly
in the context of consumer harassment one sees multiple phone
calls, multiple letters, and other communications stating that
adverse consequences will occur if the consumer does not
immediately comply with the demands made by the creditor.  In this
case, nothing is alleged.  Plaintiff-Debtor merely alleges that
Central Mortgage provided notice that it computed a post-petition
installment payment increase and the Plaintiff-Debtor did not
object to the increased payment.

The court also rejects Plaintiff-Debtor's apparent contention
that she has no obligation to address disputes concerning the
proper post-petition payment amounts to be made for Class 1 or
Class 2 Claims, or the correct determination of a creditor's pre-
petition arrearage to be paid through the Chapter 13 Plan.
Plaintiff-Debtor appears to have adopted a strategy that rather

than addressing such issues as part of confirming or enforcing her Chapter 13 plan, she can elect instead to sue the creditor alleging a violation of the automatic stay and seek monetary recovery.

Plaintiff-Debtor has the option of choosing to file a Chapter 13 reorganization or Chapter 7 liquidation. Choosing a reorganization necessarily entails much more significant emotional, financial, and time commitments than filing a Chapter 7 and proceeding directly to a fresh start. However, a properly prosecuted Chapter 13 case can yield significant economic benefit for debtors. In many cases debtors "strip" junior liens from their residence and cure the arrearage on the senior lien, thereby saving their home and realizing future appreciation without paying the junior liens.

In this setting, it is not unreasonable for a Chapter 13 debtor, advancing the interests of the estate and the debtor, to address a pre-petition claim dispute consisting of the correct computation of the post-petition payment. This includes determining the correct amount of the pre-petition arrearage to be paid through the plan. A debtor has many different devices in his or her legal arsenal, including filing a claim for the creditor, objecting to a claim, obtaining a determination of a plan term as part of a confirmation hearing, supplemental proceedings in enforcement of a plan,[14] and a declaratory relief action. To the extent that there exists a contractual attorneys' fees provision,

---

[14]/ 11 U.S.C. § 1327(a) provides, "The provisions of a confirmed plan bind the debtor and each creditor,..., and whether or not such creditor has objected to, has accepted, or has rejected the plan." This is the new "contract" to be enforced between the parties. *Max Recovery v. Than* (*In re Than*) 215 B.R. 430 435 (B.A.P. 9th Cir. 1997).

presumably a prevailing debtor would seek to recover attorneys' fees and costs for the benefit of the estate and other creditors.

Though creditors' counsel may argue that the present type of situation arises because a debtor fails to communicate with the creditor, the court is cognizant of the realities of modern home-loan debt servicing. The persons computing the current post-petition mortgage payments are typically separate from the bankruptcy group and the attorney - if any - attempting to represent the creditor in the bankruptcy case. Whether because of the volume of defaulted home loans or a conscious management decision. A thoughtful response to a debtor's dispute of a mortgage payment or arrearage calculation often does not occur until the creditor and counsel are forced to a court hearing.

Central Mortgage Company's argument that RESPA creates a free-floating exemption from the automatic stay for however it computes and seeks payment of post-petition mortgage installments is as unpersuasive with this court as that argument has been with the courts in *Rodriguez* and *Campbell*. While the Bankruptcy Code does not prohibit adjustments for post-petition changes authorized by RESPA, the automatic stay provisions of 11 U.S.C. §362(a) prohibit the collection of pre-petition debts outside of the bankruptcy. Had Congress intended to exempt only demands for payment cloaked in RESPA from the automatic stay it would have said so in a clear and unambiguous manner. Congress knows how to make an exception to the automatic stay, *see* 11 U.S.C. § 362(b), and the court will not imply that Congress gave Central Mortgage Company and other servicers or note owners free reign to do whatever they desire to obtain payment on pre-petition claims without regard to the

1  Bankruptcy Code.

2      The motion to dismiss the Second and Third Causes of Action[15]

3  for violation of the automatic stay against Central Mortgage

4  Company, Mortgage Electronic Registration Systems, Inc., and

5  William G. Malcolm is granted, without prejudice and with leave to

6  amend.

## REAL ESTATE SETTLEMENT PROCEDURES ACT

8      Plaintiff-Debtor further asserts that the Defendants have

9  violated RESPA by (1) failing to provide the transfer of servicing

10  notice, (2) improperly computing the monthly post-petition

11  installments, and (3) sending incorrect post-petition RESPA escrow

12  analyses to the Plaintiff-Debtor.    As correctly stated by

13  Defendants, while a private right of action exists for the failure

14  to provide the servicing notice, the Plaintiff-Debtor must assert

15  a damages claim caused by the failure to provide the notice.

16  12 U.S.C. § 2605(f); *Wilson v. JPMorgan Chase Bank*, No. 2:09-863

17  WBS GGH 2010 WL 2574032, *9-10, 2010 U.S. Dist. LEXIS 63212, *26-27

18  (E.D. Cal. June 25, 2010). From a review of the Amended Complaint,

19  the Plaintiff-Debtor does not assert any damages arising from the

20  failure to provide the notices of change in servicer.   The damages

21  that the Plaintiff-Debtor asserts are (1) payment of the increased

22  amounts to the Chapter 13 Trustee, (2) attorneys' fees in

23  connection with this action and the increased costs, and

24  (3) unstated emotional distress damages.   These are not alleged to

25

26      [15]/ The Third Cause of Action asserts a "violation" of
   11 U.S.C. § 362(k).  Subparagraph (k) is a remedies provision for
27  violation of the other provisions of § 362.  The court reads the
   Second and Third Causes of Action as one claim for statutory
28  damages under § 362(k), as opposed to a request for sanctions
   under 11 U.S.C. § 105 and the inherent powers of this court.

have anything to do with the alleged lack of notice.

Notices that the servicing of a loan has been transferred are required pursuant to 12 U.S.C. § 2605(b), for the transferor, and § 2605 (c), for the transferee.    It is alleged that Central Mortgage Company was the transferee of the Downey Note and that unnamed Defendants (presumably Central Mortgage Company) did not provide the required notice of transfer.  Complaint ¶¶ 72, 73, 74, 75, 76.   In the Memorandum of Points and Authorities, but not stated in the Motion, Movants merely argue that no private right of action is provided for a claim arising under 12 U.S.C. § 2604 (distribution of a special information booklet provided by the Secretary of Housing and Urban Development).  One could argue that this response was caused by Plaintiff-Debtor having cited to 12 U.S.C. § 2604, rather than § 2605 which relates to the allegations pled in paragraphs 73 - 76 of the Complaint.

Given the nonspecific pleadings, the court grants the motion, without prejudice and with leave to amend.   Central Mortgage Company should not take the granting of the motion as authority to base a motion on an obvious typographical error.

An additional RESPA claim has been asserted for the improper calculation of post-petition installments.  The Complaint is clear that the only alleged conduct in asserting an increase in post-petition installments has been by Central Mortgage Company. However, as asserted by Defendants, no private right of action has been identified or advanced by the Plaintiff-Debtor for a violation of the limitation on a requirement of advance deposits in escrow accounts.  To the extent that one looks to 12 U.S.C. § 2609, titled "Limitation on requirement of advance deposits in escrow accounts,"

the Secretary of Housing and Urban Development is given the authority to issue civil penalties for violations of that section. No provision is made for a private right of action, as Congress stated in § 2605.

The Fourth Cause of Action is dismissed as to Central Mortgage Company, Mortgage Electronic Registration Systems, Inc., and William G. Malcolm without prejudice and with leave to amend.

## CIVIL CONSPIRACY

To establish a civil conspiracy in California one must show that Defendants jointly engaged in a tort.  There is no separate civil action for conspiracy to commit a tort without there being an actual wrongful act committed.  *Favila v. Katten Muchin Rosenman, LLP*, 188 Cal. App. 4th 189, 206 (2010); *see also* 5 WITKIN SUMMARY OF CALIFORNIA LAW TORTS, 10ᵀᴴ EDITION § 45.  The effect of the "conspiracy" is that each Defendant involved in the conspiracy has an individually basis for liability.  Through incorporating the general allegation paragraphs and the RESPA cause of action allegations, the general allegations of a conspiracy are generally made as to unidentified Defendants.

The California District Court of Appeal in *Black v. Bank of America*, 30 Cal. App. 4th 1 (1994), conducted the review of a conspiracy claim and the proper basis for such a claim when the parties involved were a corporation and the agents or employees of the corporation.  The *Black* Court concluded it is well established California law that employees or agents of a corporation cannot conspire with their principal or employer when acting in their official capacity.  *Id.* at 4.  In *Gruenberg v. Aetna Ins. Co*, 9 Cal. 3d 566 (1973), the California Supreme Court concluded that an

insured could not state a conspiracy claim against his insurance company and a separate insurance adjusting firm, a separate law firm, and employees of the two separate firms because only the insurance company had a duty of good faith and fair dealing with the insured. *Id.* at 576. The two separate firms were not a party to the insurance contract and did not have such a duty to the Plaintiff-Debtor. *Id.* In its *Doctors' Co. v. Superior Court* decision, the California Supreme Court held that an attorney and an expert witness employed by an insurance company could not be held liable for conspiring to violate the company's statutory duties, again because the statutory duties were owed only by the insurance companies. 49 Cal. 3d 39, 46 (1989).

In *Younan v. Equifax Inc.*, 111 Cal. App. 3d 498 (1980), the court rejected a conspiracy claim for constructive fraud alleged to be based on a breach of fiduciary duty owed by a disability insurer. The insurer's agents did not owe the plaintiff a fiduciary duty, as only the insurer itself owed the fiduciary duty. *Id.* at 510. However, the court allowed to stand a claim for conspiracy to commit actual fraud, since even the agents owed a duty to the plaintiff to abstain from injuring the plaintiff through express misrepresentations, independent of the insurer's implied covenant of good faith and fair dealing. *Id.* at 511.

This issue was further addressed by the California Supreme Court in *Applied Equipment Corp. v. Litton Saudi Arabia Ltd*, 7 Cal. 4th 503 (1994). The California Supreme Court first distinguished between alleged conspiracies arising out of tort claims and contract claims. For contract claims, there is no tort obligation for one contracting party not to interfere with the performance of

the contract. *Id.* at 584.   There is merely a contractual obligation
to perform as promised.   *Id.*   Therefore, a person who is not a
party to a contract cannot be bootstrapped into a conspiracy tort.
*Id.*

> For there to be a civil conspiracy there must be,
> the formation and operation of the conspiracy and damage
> resulting to plaintiff from an act or acts done in
> furtherance of the common design . . . . In such an
> action the major significance of the conspiracy lies in
> the fact that it renders each participant in the wrongful
> act responsible as a joint tortfeasor for all damages
> ensuing from the wrong, irrespective of whether or not he
> was a direct actor and regardless of the degree of his
> activity.

*Id.* at 512.   However, each of the actors must have a duty to the
person alleging a conspiracy.   The conspiracy is to have a co-
conspirator do the act that breaches everyone's respective duties.

In this case, all of the operative allegations have been made
against Central Mortgage Company for the remaining causes of action
in this Adversary Proceeding for which the nonspecific conspiracy
is alleged.   The Plaintiff-Debtor only makes boilerplate
allegations that other unnamed Defendants "conspired" for the
"recouping of pre-petition claims from post-petition estate
property resulting in systematic injury to debtors."   *Id.* ¶ 85.
Further, there is no allegation as to what duties, if any, that
these unnamed Defendants owe to the Plaintiff-Debtor and the
damages caused to them by the breach of those duties.

The court is also not persuaded by the general argument that
all of these parties are participating in a chain of events which
culminate with Central Mortgage Company intentionally miscomputing
post-petition mortgage installments.   Though this Plaintiff-Debtor
and counsel are convinced that a grand conspiracy exists to demand

excessive payments based on the co-conspirators believing that "nobody really cares because the debtor owes the money," this Plaintiff-Debtor may pursue claims against identified defendants, not merely a generic complaint where nobody is sure which defendant may be liable under the various causes of action. A complaint is not a free-floating pleading in which persons are named, but the allegations against them to be specified at a later date. In substance, for Defendants other than Central Mortgage Company, the Plaintiff-Debtor argues that she needs to sue them first, then conduct discovery against the various Defendants, and finally subsequently figure out what claims, if any, she could have against one or more of the Defendants. One does not commence litigation against a defendant to conduct discovery to determine if the plaintiff has any potential  claims it could allege in good faith against that defendant.

In her opposition, the Plaintiff-Debtor argues that each of the named Defendants use the NewTrak system which improperly fails to distinguish between pre-petition and post-petition escrow arrearage. The opposition states that Plaintiff-Debtor has not "explored through discovery" how this product is sold, but presumes that it relates to her loan and the computation done by Central Mortgage Company. Further, Plaintiff-Debtor argues that MERS and others yet to be determined have failed to provide notices to her. Therefore, presumably, she should be allowed to advance a conspiracy theory against everyone.

This contention fails. The Plaintiff-Debtor has not alleged what duty to this Plaintiff-Debtor owed by the non-Central Mortgage Company Defendants has been breached. Further, the Plaintiff-

26

Debtor has not alleged the damages flowing from a breach of duty by the non-Central Mortgage Company Defendants. At best, the contention is that the Plaintiff-Debtor asserts that she does not like what the other Defendants may do as part of their business practices to other persons, and therefore seeks to recover damages from them as part of a larger conspiracy of creditors and credit providers against debtors in general. This does not sufficiently state a conspiracy claim against any of the Defendants, including Central Mortgage Company, the only party alleged to have engaged in the complained of conduct with respect to this Plaintiff-Debtor.

The court dismisses the Fifth Cause of Action for conspiracy as to all Defendants, without prejudice and with leave to amend.

## CONCLUSION

The motion to dismiss is granted as to the First Cause of Action (Declaratory Relief), the Second and Third Causes of Action (11 U.S.C. § 362), Fourth Cause of Action (RESPA), and Fifth Cause of Action (Conspiracy), which are all claims and causes of action in the Complaint, for Mortgage Electronic Information Systems, Inc. and William G. Malcolm. The Motion is denied as to the First Cause of Action (Declaratory Relief), and granted as to the Second and Third Causes of Action (11 U.S.C. § 362), Fourth Cause of Action (RESPA), and Fifth Cause of Action (Conspiracy), which are all other claims and causes of action in the Complaint, for Central Mortgage Company. All dismissals are granted without prejudice and with leave to amend.

The Plaintiff-Debtor shall file an amended complaint, if any, on or before September 30, 2011. If no amended complaint is filed, Central Mortgage Company shall file its answer on or before

October 20, 2011.  If an amended complaint is filed, the named Defendants shall file their responsive pleading on or before October 20, 2011.

This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law pursuant to Rule 52, Fed. R. Civ. P. and Rule 7052, Fed. R. Bankr. P., and the court shall issue a separate order consistent with this ruling.

Dated: September *15*, 2011

RONALD H. SARGIS, Judge
United States Bankruptcy Court

This document does not constitute a certificate of service.  The parties listed below will be served a separate copy of the attached document(s).

Peter Macaluso
7311 Greenhaven Dr #100
Sacramento, CA 95831

Chand Singh
38 Caprice Ct
Sacramento, CA 95832

Christina O
2112 Business Center Dr 2nd Fl
Irvine, CA 92612

Robert McWhorter
915 L St #1000
Sacramento, CA 95814

Lawrence Loheit
PO Box 1858
Sacramento, CA 95812-1858

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814